<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

June 22, 2026

Yongmoon Kim
Kim Law Firm LLC
411 Hackensack Ave., Suite 701
Hackensack, NJ 07601
*Counsel for Plaintiffs*

Lynne E. Evans
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
*Counsel for Defendant*

**<u>LETTER OPINION FILED WITH THE CLERK OF THE COURT</u>**

**Re:    *Tarsky v. TD Bank, N.A., Civ. No. 25-16296 (SDW) (SDA)***

Counsel:

Before this Court is Defendant TD Bank, N.A.'s ("Defendant" or "TD Bank") Motion to Dismiss (D.E. 5-1) Plaintiffs Polina Tarsky ("Ms. Tarsky") and Michael Tarsky's ("Mr. Tarsky") (collectively, "Plaintiffs") Complaint (D.E. 1-2 ("Compl.")), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1441. Venue is proper pursuant to 28 U.S.C. § 1391.  This Opinion is issued without oral argument pursuant to Rule 78.  For the reasons set forth herein, Defendant's Motion is **GRANTED**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs opened their TD Bank accounts for personal, family, and household purposes. (Compl. ¶ 9.)  When opening the accounts, Plaintiffs entered into the Personal Deposit Account

Agreement[1] ("PDAA" or "Agreement"), which includes an "Electronic Funds Transfers Disclosure" addressing unauthorized transfers and providing that if Plaintiffs notice any unauthorized transfers, they must notify Defendant "at once." (D.E. 5-3 at 25.) By entering into the PDAA, Plaintiffs also agreed to the Limited Liability clause stating that Defendant will not be liable for services related to the PDAA unless it acted in bad faith. (*Id.* at 14.) Finally, the PDAA provides that neither it nor the deposit relationship creates a "fiduciary, quasi-fiduciary, or special relationship" between Plaintiffs and Defendant, and specifies that the parties' relationship is solely that of debtor and creditor. (*Id.* at 15.)

In August 2024, Ms. Tarsky applied for a position with WhalesTrade LTD ("WhalesTrade") through LinkedIn. (Compl. ¶ 12.) In September 2024, a WhalesTrade representative contacted her, offered her the job, and said that she would earn a few hundred dollars a week. (*Id.* ¶¶ 13–14.) During onboarding, Ms. Tarsky was told she was required to pay WhalesTrade $1,000.00 for her training, which she paid on September 3, 2024 via Cash App. (*Id.* ¶¶ 14–16.) From September 2024 to January 2025, WhalesTrade repeatedly told Ms. Tarsky that she needed to invest additional funds in her training; over that five-month period, Plaintiffs sent WhalesTrade approximately $36,301.00 via Cash App. (*Id.* ¶¶ 17–18.) During this time, Ms. Tarsky received only about $150.00 in compensation, despite repeatedly requesting payment. (*Id.* ¶ 19.)

On February 12, 2025, Ms. Tarsky wrote to TD Bank to dispute what she described as "unauthorized withdrawals," and she sent a second dispute letter on February 22, 2025. (*Id.* ¶¶ 20–21.) After sending the letters, Ms. Tarsky called a local TD Bank branch for assistance in disputing the unauthorized transactions; a branch representative advised her that they had received her letters but would not take any action regarding the fraudulent transactions. (*Id.* ¶¶ 22–23.) On March 17, 2025, at the branch manager's request, Ms. Tarsky visited the local branch in person, and the manager likewise informed her that the bank could not take action on the fraudulent transactions but declined to provide that refusal in writing. (*Id.* ¶¶ 25–28.) On August 11, 2025, Plaintiffs sent another letter to TD Bank requesting assistance in recovering the funds lost through the unauthorized withdrawals. (*Id.* ¶ 29.) TD Bank has never provided a written response to Plaintiffs' multiple letters, has not adequately investigated the matter, and has not provided Plaintiffs with the documents it relied on in reaching its determination. (*Id.* ¶ 30.)

On September 2, 2025, Plaintiffs filed a four-count Complaint in the Superior Court of New Jersey, Sussex County, alleging claims for violations of the Electronic Fund Transfer Act ("EFTA") and the New Jersey Consumer Fraud Act ("NJCFA") (Counts I and IV), negligence (Count II), and unjust enrichment and disgorgement (Count III). (*See generally* Compl.) On

---

[1] Plaintiffs do not mention the PDAA in their Complaint, but it is integral to the case and can be considered at the motion to dismiss stage. *Schmidt v. Skolas*, 770 F.3d 241, 250 (3d Cir. 2014) ("[T]he justification for the integral documents exception is that it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to his complaint.")).

September 15, 2025, Defendant was served.  (D.E. 1 ¶ 2.)  Defendant thereafter removed the action to this Court and moved to dismiss the Complaint.  (*See* D.E. 1; D.E. 5-1.)  Timely briefing ensued. (D.E. 11–12.)

## II.   LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* Determining whether allegations are plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint."  *Mayer v. Belichik*, 605 F.3d 223, 229 (3d Cir. 2010).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss.  *Twombly*, 550 U.S. at 555.

## III.   DISCUSSION

Plaintiffs allege that TD Bank permitted systemic security failures that enabled WhalesTrade fraudsters to withdraw funds from Plaintiffs' accounts through a series of fraudulent transfers.  (Compl. ¶ 2.)  They argue that TD Bank failed to conduct a good faith investigation or provide related documentation, in violation of the EFTA and affirmatively mispresented their account security while refusing to comply with federal error-resolution mandates, in violation of the NJCFA.  (*Id.* ¶¶ 35–58; 78–87.)  Defendant seeks to dismiss all claims against it, contending that Plaintiffs' allegations fail as a matter of law because:  (1) the EFTA claim is barred because the transfers were authorized and notice was untimely; (2) the negligence claim is barred by the economic loss doctrine and the absence of a fiduciary relationship between the parties; (3) the unjust enrichment claim fails because TD Bank received no benefit at Plaintiffs' expense; and (4) the NJCFA claim is barred by the PDAA's Limited Liability clause and fails to meet the heightened pleading standards of Rule 9(b).  (D.E. 5-1 at 6–7.)

### A.  EFTA Claim

The EFTA establishes the basic legal framework governing electronic fund and remittance transfer systems.  *Perry v. OCNAC #1 Fed. C.U.*, 423 F. Supp. 3d 67, 77 (D.N.J. 2019) (quoting *Golden-Koether v. JPMorgan Chase Bank, N.A.*, No. 11-3586, 2011 WL 6002979, at *2 (D.N.J.

Nov. 29, 2011)).  The statute provides a private cause of action, allowing consumers to recover damages for unauthorized electronic fund transfers from their accounts.  *Id.*  An unauthorized electronic funds transfer is a transfer initiated by someone other than the consumer without actual authority and from which the consumer receives no benefit.  12 C.F.R. § 1005.2(m); *see Salomon v. Nelnet Servicing LLC*, No. 25-10259, 2026 WL 1091769, at *7 (D.N.J. Apr. 22, 2026) ("Plaintiff has failed to plausibly plead a claim under EFTA because Plaintiff's own allegations indicate that she authorized Discover to make automatic withdrawals from her account . . .").  To trigger a bank's obligations under the EFTA, a consumer must also provide notice of an alleged error or unauthorized transaction within sixty days after the bank transmits the statement with the error.  15 U.S.C. § 1693f(a); 12 C.F.R. § 1005.6(b)(3); *see Beaman v. Bank of Am., N.A.*, No. 21-20561, 2023 WL 4784254, at *8 (D.N.J. July 27, 2023).  If notice is untimely, the financial institution has the burden of demonstrating that the consumer is liable for the allegedly unauthorized transfers that timely notice would have prevented.  *Beaman*, 2023 WL 4784254, at *9.

Here, Plaintiffs' EFTA claim fails because they concede that they authorized and initiated the transfers at issue, even if they did so because of a scam.  *See Wilkins v. Navy Fed. Credit Union*, No. 22-2916, 2023 WL 239976, at *19 (D.N.J. Jan. 18, 2023) (holding that scam-induced transactions were not "unauthorized" because the plaintiff failed to allege that anyone hacked, took control of, or accessed her account).  Accordingly, the transfers were not "unauthorized", and the EFTA claim fails.

Plaintiffs also contend that TD Bank violated the EFTA by failing to provide written responses to their repeated dispute letters and their in-person visits to a local branch.  (Compl. ¶¶ 42–50; D.E. 11 at 14–16.)  While Plaintiffs correctly note that a failure to timely respond to requests for clarification and documentation can constitute an independent EFTA violation, (D.E. 11 at 14–16), their claim nevertheless fails because they did not provide timely notice of the alleged errors.  Plaintiffs sent their first dispute letter on February 12, 2025, more than sixty days after the initial transfer to WhalesTrade in September 2024 and after the transactions first appeared on their account statements.  (Compl. ¶ 20.)  Plaintiffs argue that the sixty-day period should be extended due to "extenuating circumstances", as they had no reason to suspect that earlier statements contained errors as they were being scammed.  (D.E. 11 at 16.)  However, the contemplated "extenuating circumstances" are limited to situations such as extended travel or hospitalization— conditions that prevent a consumer from monitoring their account statements.  § 1693g(a)(2).  Moreover, Defendant has met its burden of demonstrating that Plaintiffs are liable for the allegedly unauthorized transfers, as Plaintiffs themselves initiated the transfers to WhalesTrade, rather than a third party accessing or taking control of their accounts.  (Compl. ¶¶ 15–18.)

B. <u>NJCFA Claim</u>

Rule 9(b)'s heightened pleading standard, which applies to NJCFA claims, requires a party to plead with "particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Crozier v. Johnson & Johnson Consumer Companies, Inc.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (quoting *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 91 (D.N.J. 2011)).  To meet this standard, the complaint must state "the date, time and place of the alleged fraud or otherwise inject precision or

4

some measure of substantiation into [the] fraud allegation." *Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

Here, Plaintiffs' NJCFA claim fails to satisfy Rule 9(b)'s particularity requirement. The Complaint alleges that Defendant misrepresented the adequacy of its security by: (1) failing to safeguard Plaintiffs' accounts and funds; (2) failing to adequately investigate the allegedly unauthorized transactions; (3) allowing hackers to access Plaintiffs' assets; (4) failing to comply with the EFTA; and (4) failing to provide the requested investigative materials. (Compl. ¶ 85.) While the Complaint alleges, for example, that a branch manager declined to provide documentation regarding the bank's investigation, it does not plead with specificity how TD Bank failed to safeguard Plaintiffs' funds or how any third-party gained access into Plaintiffs' accounts. (*Id.* ¶ 28.) Nor does it allege the date, time, and place of the purported misrepresentations or otherwise provide the precision that Rule 9(b) requires. Accordingly, the NJCFA claim fails at the outset for failing to meet the pleading standard.

C. Negligence

To plead negligence under New Jersey law, a plaintiff must allege: (1) duty of care; (2) breach of that duty; (3) actual and proximate causation; and (4) damages. *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561, 571 (N.J. 2013). A negligence claim cannot arise from a contractual relationship unless the breaching party owes an independent legal duty. *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002). There is no presumed fiduciary relationship between a bank and its customer, as creditor-debtor relationships rarely give rise to a fiduciary duty. *United Jersey Bank v. Kensey*, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997). Only "special circumstances", generally when the lender invites special trust or confidence in its advice and induces reliance, can support such a duty. *Id.* at 45. Additionally, banks generally have no duty to manage or monitor customer accounts or to alert customers to suspicious activity. *Drosos & Assocs., PC v. TD Bank NA*, No. 23-1275, 2024 WL 863319, at *4 (D.N.J. Feb. 29, 2024) (quoting *Globe Motor Car Co. v. First Fid. Bank, N.A.*, 641 A.2d 1136, 1139 (N.J. Super. Ct. Law Div. 1993)).

Here, the PDAA, which Plaintiffs agreed to, expressly disclaims any fiduciary or special relationship between TD Bank and Plaintiffs[2]. (D.E. 5-3 at 15.) Even apart from the PDAA, Plaintiffs allege no "special circumstances" sufficient to create a fiduciary relationship, as the Complaint does not plead that TD Bank encouraged Plaintiffs to place special trust in its advice or

---

[2] The PDAA's Limited Liability clause further provides that TD Bank will not be liable for performing its services under the PDAA absent bad faith. (D.E. 5-3 at 14.) New Jersey courts routinely enforce such limitation of liability provisions. *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 314 (D.N.J. 2020) (quoting *Pro. Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 245 F. App'x 161, 167 (3d Cir. 2007)). Plaintiffs' negligence and unjust enrichment claims do not allege or plausibly imply that TD Bank acted in bad faith. Instead, the only actors alleged to have acted in bad faith are WhalesTrade representatives, who are not parties to this case. (Compl. ¶¶ 14–19.) Without a plausible allegation of bad faith, the Limited Liability clause bars Plaintiffs' negligence (Count II) and unjust enrichment (Count III) claims.

that the parties otherwise shared a relationship of special confidence.  Accordingly, the negligence claim fails.

Plaintiffs' negligence claim is also barred by New Jersey's economic loss doctrine, which precludes recovery in tort for purely economic losses arising from a contractual relationship.  *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 150 n.2 (N.J. 2020) (citing *Dean v. Barrett Homes, Inc.*, 8 A.3d 766, 771 (N.J. 2010)).  Here, Plaintiffs' relationship with TD Bank is governed by contract—the PDAA—and Plaintiffs seek only economic damages on their negligence theory, namely the $36,301.00 they transferred to WhalesTrade.  (Compl. ¶ 70.)  While Plaintiffs also allege emotional damages, those claims are derivative of their claimed economic losses.  (*Id.*)

    D.  Unjust Enrichment and Disgorgement

To state an unjust enrichment claim, a plaintiff must allege that the defendant received a benefit at the plaintiff's expense and that under the circumstances, it would be unjust for the defendant to retain that benefit without payment.  *Christie v. Nat'l Inst. for Newman Stud.*, No. 16-6572, 2019 WL 1916204, at *17 (D.N.J. Apr. 30, 2019) (citing *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004)).  The plaintiff must also plead a sufficiently direct relationship with the defendant to support the unjust enrichment claim.  *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011) (quoting *Nelson v. Xacta 3000 Inc.*, No. 08-5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009)).

Here, the Complaint fails to state an unjust enrichment claim.  It does not plausibly allege that TD Bank received any benefit from Plaintiffs; instead, it offers only conclusory allegations that "funds collected by Defendant conferred a benefit on Defendant" and that "Defendant knows that they received a benefit . . ." (Compl. ¶¶ 73–74.)  Plaintiffs do not specify what funds TD Bank collected from them.  Even if a benefit were adequately alleged, Plaintiffs do not allege how the benefit was obtained at their expense or under circumstances that would make it unjust for Defendant to retain it.  Accordingly, the unjust enrichment claim is dismissed for failure to state a claim.

## V.  **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED WITHOUT PREJUDICE**.  Plaintiffs shall have thirty (30) days to amend the Complaint.  An appropriate order follows.

            /s/ Susan D. Wigenton
         **SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:  Parties
      Stacey D. Adams, U.S.M.J.